## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC COOPER, as the Personal Representative of the Estate of Michael Dudley Cooper, Deceased,<br><br>      Plaintiff,<br><br>v.<br><br>(1)   KESTO SIMPSON, individually;<br><br>(2)   THE CITY OF WALTERS, a municipal corporation;<br><br>(3)   KENT SIMPSON, individually and in his official capacity; and<br><br>(4)   JOHN DOES 1-10, individually,<br><br>      Defendants. | Case No. CIV-18-__1060-M__ |

## **COMPLAINT**

Plaintiff Eric Cooper, as the duly appointed Personal Representative of the Estate of Michael Dudley Cooper, Deceased, for his causes of action against Defendants Kesto Simpson, individually, The City of Walters, a municipal corporation, and John Does 1-10, alleges and states as follows:

### The Parties

1. Plaintiff Eric Cooper ("Cooper") is an individual and a resident of the Western District of Oklahoma. Cooper was the nephew of Michael Dudley Cooper,

1

deceased ("Dudley"). On September 27, 2018, Cooper was duly appointed as the Personal Representative of Dudley's Estate.

2. Defendant Kesto Simpson is an individual citizen of the State of Oklahoma and a resident of the Western District of Oklahoma. At the time the events giving rise to this case occurred, Simpson was employed as a commissioned peace officer by the City of Walters.

3. Defendant The City of Walters ("City") is a municipal corporation organized under the laws of the State of Oklahoma with its principal and primary place of business and operation in the Western District of Oklahoma.

4. Defendant Kent Simpson ("Sheriff") was at the relevant time the duly elected Sheriff of Cotton County.

5. Defendants John Does 1-10 are individual law enforcement officers who were located at the scene and whose names are currently unknown to Plaintiff.

## Jurisdiction and Venue

6. This Court has personal jurisdiction over the Defendants because they are all citizens of the State of Oklahoma.

7. This Court has original subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

8. Venue is proper in this judicial district because all or part of Cooper's cause of action arose within the Western District of Oklahoma.

Factual Allegations

9. On Sunday, March 11, 2018, at around midnight, Dudley and his sister, Sadie Teakell ("Sadie"), were at their home located at 515 W. Nebraska, Walters, Oklahoma 73572 watching TV on the couch. Ricky Crank, a friend of Sadie's son Heath Teakell, was also in the house.

10. Crank began looking out the front door and stated that he saw a bunch of police outside the house down the road. As Sadie stood up from the couch, the officers rushed in through the front door with their guns drawn and aimed at the occupants, namely Sadie, Ricky Crank, and Dudley.

11. The officers were at the home in order to serve a search warrant that had been authorized by a judge on March 10, 2018. The purpose of the search warrant was to locate property allegedly stolen by Ricky Crank and Heath Teakall. Dudley and Sadie were unaware of the alleged stolen property and there were absolutely no criminal allegations against either of them.

12. The search warrant did not authorize officers to conduct a night time search after 10:00 p.m. In serving the warrant after 10:00 p.m. without authorization, Simpson and John Does 1-10 violated and acted contrary to 22 O.S. § 1230, which only authorizes the service of search warrants between the hours of 6:00 a.m. and 10:00 p.m., unless specific findings are made by the magistrate.

13. Kent Simpson directed Simpson and John Does 1-10 to execute the search warrant after 10:00 p.m. in clear violation of law.

14. Once they made their illegal entry, the officers ordered everyone inside of the residence to get onto the ground. Sadie and Ricky Crank immediately complied, as they were standing up and simply went to the ground.

15. Dudley was still sitting on the couch when the officers rushed in the home. Dudley was slower to respond to the officers' order, but he did not resist or give any indication he was refusing to comply with their orders.

16. Defendant Kesto Simpson was one of the officers who rushed into the residence. Simpson was impatient with Dudley and pulled him off the couch and slammed him into the floor.

17. Dudley was about 5'3" and weighed 100 pounds. Upon information and belief, Simpson stood over 6' tall and weighed more than 225 pounds.

18. As a result of the violence of the impact, Dudley was knocked unconscious and suffered an acute subdural hematoma with cerebral edema, herniation and infarction, along with a facial contusion and abrasion and laceration and contusion of the lips, as well as posterior rib fractures.

19. Dudley, Sadie, and Ricky Crank were handcuffed with their hands behind their backs while lying face-down on the ground.

20. Officer Simpson, along with Kent Simpson and John Does 1-10, left Dudley handcuffed on the ground, unconscious and bleeding, while they searched the residence. Dudley never moved and never uttered a word during this time. Simpson and/or John Does 1-10 stepped on Sadie and Dudley as they passed by them during the search of the home.

21. Neither Sadie nor Dudley ever posed any threat of harm to any of the officers, nor did the officers have any reasonable basis or suspicion to detain Sadie or Dudley in handcuffs in the first instance.

22. After approximately 30 minutes, Simpson, Kent Simpson, and John Does 1-10 pulled Dudley and Sadie up off the floor by the handcuffs. This act was painful and unnecessary. Simpson and John Does 1-10 placed Dudley and Sadie on the couch.

23. When Dudley was on the couch, Sadie first noticed that there was blood and swelling on Dudley's face that had not been present before he was violently slammed into the ground by Defendant Kesto Simpson. It was obvious to Sadie that Dudley was hurt badly as a result of Simpson's actions.

24. Rather than obtain medical care and comfort for Dudley, Simpson began slapping Dudley in the face and shaking him, but Dudley did not respond or wake up. Simpson then walked out of the living room rolling his eyes in sarcasm.

25. Dudley was left, unconscious and bleeding, on the couch for a lengthy period of time, until approximately 1:40 a.m. by Simpson, Kent Simpson, and John Does 1-10. Simpson, Kent Simpson, and John Does 1-10 all had full knowledge of the severity of Dudley's medical condition because he was obviously unconscious and bleeding.

26. Defendants did not contact an ambulance to seek medical care and treatment for Dudley until 1:40 a.m., nearly two hours after he was knocked unconscious and approximately an hour or more after Dudley was picked up off the floor.

27. Dudley was transported to Comanche County Memorial Hospital where he was later pronounced dead at approximately 6:08 p.m. on March 12, 2018.

28. Following Dudley's death, the Oklahoma Medical Examiner conducted an autopsy and concluded that the probable cause of Dudley's death was blunt force trauma to the head, with the manner of death being homicide.

## FIRST CAUSE OF ACTION – EXCESSIVE FORCE
## IN VIOLATION OF THE FOURTH AMENDMENT OF THE CONSTITUTION

29. Cooper incorporates by reference all of the above and foregoing allegations as though set forth in full herein.

30. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

31. Simpson utilized unreasonable and excessive force when he violently slammed Dudley into the ground in such a manner that he caused blunt force trauma that led to Dudley's death, which the Medical Examiner determined was a homicide.

32. It is clearly established law that citizens are entitled to freedom from excessive force under the Fourth Amendment of the United States Constitution, and that Cooper's right was so well established that Defendant Simpson is not entitled to qualified immunity in that he slammed Dudley so violently that he caused his death.

33. As a direct and proximate result of the actions of Simpson and John Does 1-10 as described herein, Dudley sustained personal injuries, mental injuries, medical expenses and ultimately death.

34. Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, will seek to recover all the rights and remedies provided under 42 U.S.C. § 1983 or otherwise available to him under the law.

**WHEREFORE** Plaintiff Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, prays for judgment against Defendants Kesto Simpson and John Does 1-10 as follows:

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(2) For all those damages afforded to the Estate of Michael Dudley Cooper for his wrongful death as provided by statute or law in an amount in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(3) For punitive and exemplary damages as determined by the jury at the time of trial;

(4) For interest thereon as provided by law;

(5) For the costs and expert fees as provided by 42 U.S.C. § 1988;

(6) For any other such and further relief as the Court deems just and proper, whether that is specifically requested herein or requested at a later.

**SECOND CAUSE OF ACTION – FAILURE TO PROVIDE MEDICAL CARE
IN VIOLATION OF THE FOURTEENTH AMENDMENT**

35. Cooper incorporates by reference all of the above and foregoing allegations as though set forth in full herein.

36. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law."

37. Dudley suffered from a medical need that was sufficiently serious because he was unconscious and bleeding after an excessive use of force, and it was so obvious that he needed medical attention that even a lay person would easily recognize the necessity for a doctor's attention.

38. Simpson, Kent Simpson, and John Does 1-10 knew of an excessive risk of harm to Dudley's health or safety as a result of the excessive use of force, as Dudley was unconscious and bleeding.

39. Simpson, Kent Simpson, and John Does 1-10 disregarded this obvious risk and failed to seek any medical care or treatment for Dudley for a period of more than one hour.

40. Simpson, Kent Simpson, and John Does 1-10 exhibited deliberate indifference to Dudley's serious medical needs directly resulting in a violation of Dudley's constitutional rights.

41. As a direct and proximate result of the actions of Simpson, Kent Simpson, and John Does 1-10 as described herein, Dudley sustained personal injuries, mental injuries, medical expenses and ultimately death.

42. Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, will seek to recover all the rights and remedies provided under 42 U.S.C. § 1983 or otherwise available to him under the law.

43. At the time of the actions described herein, Dudley's constitutional right to receive medical care and treatment was clearly and plainly established.

WHEREFORE Plaintiff Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, prays for judgment against Defendants Kesto Simpson, Kent Simpson, and John Does 1-10 as follows:

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(2) For all those damages afforded to the Estate of Michael Dudley Cooper for his wrongful death as provided by statute or law in an amount in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(3) For punitive and exemplary damages as determined by the jury at the time of trial;

(4) For interest thereon as provided by law;

(5) For the costs and expert fees as provided by 42 U.S.C. § 1988;

(6) For any other such and further relief as the Court deems just and proper, whether that is specifically requested herein or requested at a later.

### THIRD CAUSE OF ACTION – MUNICIPAL LIABILITY

44. Cooper incorporates by reference all of the above and foregoing allegations as though set forth in full herein.

45. As a municipality that provides police protective services, Defendant City has a constitutional duty to provide adequate and appropriate training to its commissioned police officers.

46. Defendant City's police officers are charged with the duty of serving search warrants and using reasonable force to effectuate any potential detention of occupants present during warrant service.

47. Defendant City failed to provide appropriate and necessary training to Defendant Kesto Simpson and its other officers in the lawful execution of search warrants and the lawful use of force.

48. The need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy-makers of the city can reasonably be said to have been deliberately indifferent to the need.

49. The failure to provide proper and appropriate training represents a policy for which the City of Walters is responsible.

50. Defendant City's failure to train Defendant Simpson and other officers about lawful search warrant service and use of force was the moving force and proximate cause of Dudley's death.

51. As a direct and proximate result of the actions of Defendant City as described herein, Dudley sustained personal injuries, mental injuries, medical expenses and ultimately death.

52. Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, will seek to recover all the rights and remedies provided under 42 U.S.C. § 1983 or otherwise available to him under the law.

WHEREFORE Plaintiff Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, prays for judgment against Defendant City of Walters as follows:

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(2) For all those damages afforded to the Estate of Michael Dudley Cooper for his wrongful death as provided by statute or law in an amount in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(3) For interest thereon as provided by law;

(4) For the costs and expert fees as provided by 42 U.S.C. § 1988;

(5) For any other such and further relief as the Court deems just and proper, whether that is specifically requested herein or requested at a later.

### FOURTH CAUSE OF ACTION – AGAINST KENT SIMPSON IN HIS OFFICIAL CAPACITY

53. Cooper incorporates by reference all of the above and foregoing allegations as though set forth in full herein.

54. Defendant Kent Simpson, as the duly elected Sheriff of Cotton County, was the final policy-maker for all law enforcement policies and decisions, including the decision to unlawfully enter Dudley's residence and the decision not to provide medical care or treatment to Dudley.

55. Defendant Kent Simpson in his official capacity as Sheriff of Cotton County is liable for the unconstitutional acts that he caused and authorized set forth herein.

56. As a direct and proximate result of the actions of Simpson, Kent Simpson, and John Does 1-10 as described herein, Dudley sustained personal injuries, mental injuries, medical expenses and ultimately death.

57. Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, will seek to recover all the rights and remedies provided under 42 U.S.C. § 1983 or otherwise available to him under the law.

WHEREFORE Plaintiff Eric Cooper, as the Personal Representative of the Estate of Michael Dudley Cooper, prays for judgment against Defendants Kesto Simpson, Kent Simpson, and John Does 1-10 as follows:

(7) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(8) For all those damages afforded to the Estate of Michael Dudley Cooper for his wrongful death as provided by statute or law in an amount in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00);

(9) For punitive and exemplary damages as determined by the jury at the time of trial;

(10) For interest thereon as provided by law;

(11) For the costs and expert fees as provided by 42 U.S.C. § 1988;

(12) For any other such and further relief as the Court deems just and proper, whether that is specifically requested herein or requested at a later.

Dated this 22nd day of October, 2018.

Respectfully submitted,

/s/ Barrett T. Bowers
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
Barrett T. Bowers, OBA#30493
For the Firm: Ward & Glass, L.L.P.
1601 N.W. 36th Avenue, Suite 100
Norman, Oklahoma 73072
rstermer@wardglasslaw.com
woody@wardglasslaw.com
barrett@wardglasslaw.com
405-360-9700
405-360-7902 (fax)

-and-

Bret Burns
Burns Law Office
519 W. Chickasha Avenue
Chickasha, OK  73018
**ATTORNEYS FOR PLAINTIFF**

-and-

Renee Walker Gunkel, OBA#12314
Preston M. Gunkel, OBA#33185
Gunkel Law Group, PLLC
P.O. Box 1124
Altus, OK 73522
(580) 482-8204 – T
renee@gunkellawgroup.com
preston@gunkellawgroup.com

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**